# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA
# PHILADELPHIA DIVISION

| | | |
|---|---|---|
| In Re: | : | |
|    RBSF CONSTRUCTION COMPANY | : | Chapter 11 |
|       Debtor(s) | : | |
| HSBC BANK USA, NATIONAL | : | Case Number: 24-11678-pmm |
| ASSOCIATION, AS TRUSTEE FOR | : | |
| WELLS FARGO MORTGAGE BACKED | : | |
| SECURITIES 2007-7 TRUST | : | |
|       Movant | : | |
| v. | : | |
| RBSF CONSTRUCTION COMPANY | : | |
|       Debtor(s) / Respondent(s) | : | |

## DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO
## LENDER'S MOTION FOR RELIEF

### STATEMENT OF THE CASE

     RBSF Construction Company ("Debtor") filed for Chapter 11 Subchapter V bankruptcy protection on May 16, 2024, after a general contractor terminated Debtor's subcontracts, resulting in over $100,000 in unpaid accounts receivable. Debtor operates from real property located at 3 E Spring Oak Circle, Media, PA 19063 (the "Property") under an unexpired lease with the Estate of Amy Donaghy.

     The Property is subject to a mortgage originally executed by Amy C. Donaghy on March 29, 2007, in favor of Shelter Mtg. Co., LLC, which was subsequently assigned to HSBC Bank USA, National Association, as Trustee for Wells Fargo Mortgage-Backed Securities 2007-7 Trust ("HSBC"). Amy Donaghy passed away on April 17, 2023, and her estate now owns the Property.

     HSBC filed a Motion for Relief from Automatic Stay seeking to foreclose on the Property. Critically, Debtor's lease contains a purchase option (Paragraph 16) stating: "At any time during the duration of this Lease, the Tenant shall have the option to purchase the Premises for [TBD] by written notice to the Landlord."

HSBC obtained a consent judgment against Amy Donaghy on June 30, 2015, in the amount of $783,754.48 plus interest.

Garvin Donaghy, principal of debtor RBS, now owns subject property via estate of his wife, Amy Donaghy, an obligor on the mortgage. His wife was sole owner of the property and borrower on the mortgage before she died. Garvin Donaghy is a widower of Amy Donaghy. He is not an obligor on the mortgage. Neither is Debtor RBS. Therefore, neither Mr. Donaghy nor Debtor have obligation on the mortgage debt.

Under the lease, RBSF has the right of first refusal and option to purchase. Under Pennsylvania law, option to purchase creates an interest in land subject to protection by the Bankruptcy Code.

## ISSUE PRESENTED

Whether a debtor's unexpired lease containing an option to purchase real property creates a sufficient property interest to bring the underlying real estate within the protection of the bankruptcy estate and automatic stay under 11 U.S.C. § 541(a)(1)?

Answer: <u>yes</u>.

## ARGUMENT

### I. PENNSYLVANIA LAW RECOGNIZES OPTIONS TO PURCHASE AS SUBSTANTIAL PROPERTY INTERESTS IN REAL ESTATE

Pennsylvania courts have consistently held that options to purchase real estate constitute more than mere contractual rights—they create substantial property interests in the underlying real estate itself.

**A. Options Create Present Property Rights, Not Future Expectations**

The Pennsylvania Supreme Court established in <u>In re Powell</u>, 385 Pa. 467, 123 A.2d 650, 654 (1956), that "[a]n option to purchase land is a substantial interest in the land." This principle has been consistently reaffirmed across Pennsylvania jurisprudence.

In <u>Guido v. Township of Sandy</u>, 584 Pa. 93, 880 A.2d 1220 (2005), the Pennsylvania Supreme Court held that an "optionee in lease-to-purchase agreement had a property interest

sufficient to support a division-in-fact of the property, which occurred when optionee exercised the option and related back to date of option."

**B. Options Create Equitable Ownership That Relates Back to Grant Date**

Pennsylvania law treats option holders as equitable owners from the date of the option grant. As the court explained in Guido:

"An option to purchase is analogous to a contract for the sale of land; it is in nature an encumbrance on the land pledged. In such case, the [optionor] is a trustee of the legal title for the benefit of the purchaser [*qua optionee*].... Equity regards the person bound to convey as having done what he should have done, i.e. made the conveyance, and treats him as trustee for the optionee." Guido, 880 A.2d at 1229-30 (quoting Detwiler v. Capone, 357 Pa. 495, 55 A.2d 380, 383 (1947)).

Significantly, "[t]he equitable interest created by the option agreement will relate back to the date of the option." Matos v. Berks Cnty. Tax Claim Bureau, 228 A.3d 976, 982 (Pa. Commw. Ct. 2020).

## II. THE THIRD CIRCUIT RECOGNIZES OPTIONS AS PROTECTED PROPERTY INTERESTS UNDER THE BANKRUPTCY CODE

**A. Options Constitute "Future Contingent Interests" Protected by the Bankruptcy Code**

The Third Circuit explicitly held that "the option to repurchase the Property [is] a future contingent interest protected under the Bankruptcy Code." Speedwell Ventures LLC v. Berley Assocs. (In re Pazzo Pazzo Inc.), No. 21-2344, 2022 U.S. App. LEXIS 34619 (3d Cir. Dec. 15, 2022).

**B. Options Survive Bankruptcy as Enforceable Rights**

In In re Lazy Days' RV Center Inc., 2013 WL 3886735, *5 (3d Cir. July 30, 2013), the Third Circuit held that option holders maintain "the same rights in the Lease that [debtor tenant] had, including the purchase option" and that such rights survive bankruptcy proceedings.

### III. DEBTOR'S OPTION TO PURCHASE CONSTITUTES "PROPERTY OF THE ESTATE" UNDER 11 U.S.C. § 541(a)(1)

#### A. Section 541(a)(1) Includes All Equitable Interests

The Bankruptcy Code defines property of the estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history confirms that "[t]he scope of this paragraph is broad" and includes interests such as "a possessory interest, or lease-hold interest."

#### B. Debtor's Lease Option Qualifies as an Equitable Interest

Here, Debtor holds an unexpired lease containing a clear option to purchase the real property. Under Pennsylvania law, this option constitutes a "substantial interest in the land" that creates an equitable ownership interest. This interest falls squarely within § 541(a)(1)'s definition of "equitable interests of the debtor in property."

The option language is sufficiently definite: "At any time during the duration of this Lease, the Tenant shall have the option to purchase the Premises." This creates a present, irrevocable right exercisable throughout the lease term—precisely the type of property interest protected by the Bankruptcy Code.

### IV. THE AUTOMATIC STAY PROTECTS DEBTOR'S PROPERTY INTEREST FROM LIENHOLDER'S INTERFERENCE

#### A. The Automatic Stay Protects All Property of the Estate

Section 362(a) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

#### B. HSBC Cannot Proceed with Foreclosure Sale

Because Debtor's option creates an equitable interest in the real property, that property becomes subject to the bankruptcy court's jurisdiction and automatic stay protection. HSBC's threatened foreclosure sale would violate the automatic stay by attempting to exercise control over property in which Debtor holds a substantial equitable interest.

#### C. No Good Cause Exists for Relief from Stay

HSBC lacks standing to seek relief from stay because:

1. **Debtor is not obligated on the mortgage debt** - Neither RBSF nor Garvin Donaghy are parties to the mortgage or consent judgment;
2. **Debtor's option creates a superior equitable interest** - The purchase option predates HSBC's current claim and creates an enforceable real property right;
3. **No direct relationship exists** - HSBC has no contractual relationship with Debtor-optionee that would justify relief from stay.

## CONCLUSION

Pennsylvania law clearly establishes that Debtor's lease option creates a "substantial interest in the land" that constitutes an "equitable interest" within the meaning of 11 U.S.C. § 541(a)(1). This interest brings the underlying real property within the protection of the bankruptcy estate and automatic stay.

HSBC's attempt to foreclose would improperly interfere with property of the estate in violation of the automatic stay. The Court should deny HSBC's Motion for Relief from Automatic Stay and enjoin any foreclosure proceedings that would disturb Debtor's protected property interest.

Respectfully submitted,

/s/ Paul A.R. Stewart
Paul A.R. Stewart, Esquire
Helm Legal Services, LLC
333 East Lancaster Ave STE 140
Wynnewood PA 19096
610-864-5600
Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA
# PHILADELPHIA DIVISION

| | | |
|---|---|---|
| In Re: | : | |
|    RBSF CONSTRUCTION COMPANY | : | Chapter 11 |
|       Debtor(s) | : | |
| HSBC BANK USA, NATIONAL | : | Case Number: 24-11678-pmm |
| ASSOCIATION, AS TRUSTEE FOR | : | |
| WELLS FARGO MORTGAGE BACKED | : | |
| SECURITIES 2007-7 TRUST | : | |
|       Movant | : | |
| v. | : | |
| RBSF CONSTRUCTION COMPANY | : | |
|       Debtor(s) / Respondent(s) | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing **Memorandum of Law in Opposition to Lender's Motion for Relief** was served on June 18, 2025 by means of the Court's CM/ECF system or via first class mail, postage prepaid, upon the following:

Daniel P. Jones, Esquire
Stern and Eisenberg, P.C.
1581 Main Street, Suite 200
The Shops at Valley Square
Warrington, PA 18976
djones@sterneisenberg.com

John Henry Schanne
DOJ-UST
Robert N.C. Nix, Sr. Federal Building
900 Market Street
Philadelphia, PA 19107
215-597-4411
John.schanne@usdoj.gov

Holly Smith Miller, Esquire
Gellert Seitz Busenkell & Brown LLC
901 Market Street
Suite 3020
Suite 1901
Philadelphia, PA 19107
215-238-0012
hsmiller@gsbblaw.com

Dave P. Adams, Esquire
DOJ-UST
Robert N.C. Nix, Sr. Federal Building
900 Market Street
Philadelphia, PA 19107
215-597-4411
dave.p.adams@usdoj.gov

Kevin P. Callahan, Esquire
DOJ-UST
Robert N.C. Nix, Sr. Federal Building
900 Market Street
Philadelphia, PA 19107
215-597-4411
kevin.p.callahan@usdoj.gov

Samantha Lieb, Esquire
DOJ-UST
One Newark Center
Suite 2100
Newark, NJ 07102
202-604-2499
Samantha.lieb2@usdoj.gov

Rachel Wolf, Esquire
DOJ-UST
One Newark Center
Suite 2100
Newark, NJ 07102
973-645-3014
Rachel.wolf@usdoj.gov

/S/ Paul A.R. Stewart, Esquire
Helm Legal Services, LLC
Attorney for Debtor

# Residential Lease
# with an Option to Buy

**1. THE PARTIES OF THIS RESIDENTIAL LEASE WITH OPTION TO PURCHASE ARE:**

**1.1 THE LANDLORD:**

Name of Company or Full Name and Surname of Individual:
_Estate of Amy Donaghy_

Agent (if applicable): _Garvin Donaghy_

Title of Agent (if applicable): _Administrator of Estate_

Physical Address: _3 East Spring Oak Circle, Media, PA 19063_

Postal Address (if different): _"Same"_

(hereinafter referred to as the "Landlord")

**1.2 THE TENANT:**

Full Name and Surname: _RBSF Construction Company_

Physical Address: _3 East Spring Oak Circle, Media, PA 19063_

Postal Address (if different): _"Same"_

Full Name and Surname: _N/A_
Physical Address: ___
Postal Address (if different): ___

Full Name and Surname: _N/A_
Physical Address: ___
Postal Address (if different): ___

Full Name and Surname: _N/A_
Physical Address: ___
Postal Address (if different): ___

Additional Members of the Tenant's Household:
_None_

(hereinafter referred to collectively as the "Tenant")

© SmartLegalForms                                   LF237 Lease with Option to Buy 9-15, Pg. 1 of 11

_[signatures: RBSF Construction Co. 5/31/23; Administrator of Estate 5/31/23]_

The Landlord and Tenant choose the above stated addresses as their physical addresses for purposes of delivery of any notice, payment of any amount, and at which legal proceedings may be instituted pertaining to this Residential Lease with Purchase Option (hereinafter referred to as the "Lease"). The Landlord and Tenant will be entitled at any time by way of written notice to the other to change the information regarding their physical addresses. Such change will become effective on day seven (7) after receipt by the other party of the notice. Any notice which the Landlord requires to give to the Tenant shall be deemed to have been validly given if sent by pre-paid registered letter to the Tenant at the rental location or left by the Landlord at such address, which notice shall be deemed to have been received five (5) days after sending by registered mail, or on the day the notice was delivered by hand.

(Unless inconsistent with the context, words signifying the singular shall include the plural and vice versa.)

**2. THE PREMISES:**

2.1 Physical Address: 3 EAST SPRING OAK CIRCLE, MEDIA PA 19063, County of DELAWARE.

2.2 Outbuildings included as part of the premises (if applicable):
DOUBLE GARAGE & GARDEN SHED.

2.3 Fixed Improvements included as part of the premises (if applicable):

2.4 Grounds included as part of the premises:
ALL GROUNDS

2.5 The Landlord stipulates that the leased property be occupied by no more than 7 persons,

*[Signatures: Best Construction Co. 5/31/23; Administrator 5/31/23]*

LF237 Lease with Option to Buy 9-15, Pg. 2 of 11

consisting of a maximum of __3__ adults and __4__ child(ren) under the age of eighteen years.

(hereinafter referred to as the "Premises")

### 3. PERIOD OF LEASE:

3.1 The initial period of the Lease is for __36__ months and shall start on __May 31st 2023__ and shall end at midnight on __May 30th 2026__.

3.2 This Lease shall be automatically renewed after the initial term on a month-to-month basis under the same conditions.

Acknowledgment by Tenant (initials of Tenant(s) signing Lease):

__GARVIN DONAGHY__
__% RBSF CONSTRUCTION COMPANY__    __GD__
Tenant Name                         Initial         Tenant Name         Initial

Tenant Name                         Initial         Tenant Name         Initial

3.3 After the initial period of the agreement this Lease may be cancelled by either the Landlord or the Tenant by giving __60__ days written notice.

### 4. RENTAL:

4.1 The monthly rental amount for the Premises for the initial period is $__1,800 00__ Starting January 31st 2025

4.2 The said monthly rental amount is escalated annually at a rate of __0__ percent of the monthly rental amount for the previous year.

4.3 Rental amount shall be paid in the form of personal check, cashier's check, money order, or direct deposit made out to __Either Estate of Amy Donaghy or Administrator__.

4.4 Rental amount shall be paid monthly in advance on or before the ~~first~~ LAST date of the month, without any deduction whatsoever at the following address: STARTING JANUARY 31ST 2025.
__8 East Spring Oak Circle, Media, PA 19063__.

4.5 The Tenant shall pay a late charge of __$100—__ if rental amount is not received within __30__ days after the due date to cover collection fees and/or additional administration fees.

4.6 The Tenant shall pay an amount of __$100—__ for each rental check returned for insufficient funds and thereafter pay rental amount by cash or cashier's check.

5/31/23

© SmartLegalForms                                   LF237 Lease with Option to Buy 9-15, Pg. 3 of 11

RBSF Construction G.
5/31/2023.
Administrator

4.7 In the event of the rental amount or any portion thereof not being paid on the due date, or the Tenant failing to meet his/her obligations under this Lease, or the Tenant surrendering his/her estate or being sequestrated, provisionally or otherwise, the Landlord shall be entitled to by written notice require the Tenant to comply with the specific obligation which he/she has failed to meet within fourteen (14) days after receiving the said written notice by hand or within fourteen (14) days after the sending thereof per registered mail, and should the Tenant still fail to comply with such obligations the Landlord shall be entitled to:

4.7.1   cancel this Lease, eject the Tenant and/or any other persons occupying the Premises without prejudice of his/her rights to claim arrear rental amount;

4.7.2   claim payment of any arrear rental amount or any other monies due, be it compensation for damages to the Premises, or damages arising out of breach of this Lease by the Tenant.

4.8 In the event of the Tenant not vacating the Premises after cancellation of this Lease by leaving his/her property or possessions behind, the Tenant shall be liable for the rental amount.

4.9 The Tenant shall not be entitled to any reduction in rental amount while the Landlord does repairs to the Premises.

## 5. ADDITIONAL PAYMENTS BY TENANT:

5.1 The Tenant shall from the date of commencement of this Lease promptly pay for all utility expenses, ~~except for:~~ RBSF Construction Company shall provide services for all maintenance & repairs as needed in lieu of cash payment from 5/31/2023 thru Jan 31st 2025. which shall be provided by the Landlord. & continue to maintain & repair property as needed thru 5/30/26

5.2 All legal costs incurred by the Landlord in respect of any legal steps taken by him/her against the Tenant to enforce any of the Tenant's obligations in terms of this Lease shall be paid for by the Tenant.

Should the Tenant fail to make payment of any of the aforementioned, the Landlord shall have the right without prejudice to his/her other rights in law or under this Lease to effect payment himself/herself and to recover the amounts so expended from the Tenant.

## 6. SECURITY DEPOSIT:

6.1 The Tenant must deposit an amount of _____0_____ with the Landlord on signature of this Lease. This deposit will be held by the Landlord and may be used at any time to repair damages caused by the Tenant to the Premises. The deposit or balance thereof will be refunded to the Tenant when this Lease expires and after inspection of the Premises but not later than __N/A__ days after this Lease expired. The deposit may also be utilized for the payment of amounts due and owing by the Tenant in terms of this Lease as well as the cost of repairing

RBSF Construction Co     LF237 Lease with Option to Buy 9-15, Pg. 4 of 11    5/3/23
5/31/23
Administrator

damage (other than ordinary wear and tear) to the Premises and/or replacing lost keys. This provision is purely for the benefit of the Landlord and does not relieve the Tenant in any way from the obligation of any other payment or liabilities in terms thereof.

6.2 The Tenant shall not under any circumstances be entitled in the final month of the tenancy to withhold payment of the rental amount or portion of the rental amount for the final month and to set off such payment against any deposit which the Tenant may have paid in terms of this Lease.

**7. TENANT OBLIGATIONS:**

7.1 The Tenant has inspected the Premises and confirms that they are suitable for the purposes for which they are let for the duration of this Lease.

7.2 The Tenant acknowledges that the Premises are in a good state of repair and specifically acknowledges that at commencement of this Lease, all of the sanitary installations and equipment, electrical installations and equipment, keys, locks, doors, windows, wash basins, and taps are in a good state of repair and working order.

7.3 The Tenant shall give written notice to the Landlord within seven (7) days after the commencement date of any structural defects in the Premises, or any defects in the abovementioned installations and equipment, and the absence of such notice shall constitute prima facie proof of the absence of any defects or missing articles and the good condition of the Premises. Any notice given by the Tenant shall not place any obligation on the Landlord to effect any repairs but will serve only to record the state of repair.

7.4 The Tenant shall allow the Landlord access to the Premises at all reasonable times with prior appointment with the Tenant to inspect the Premises or to carry out any work that may be required to be done or are deemed to be necessary in order to keep the Premises fixtures and fittings in good order and condition.

7.5 The Tenant undertakes to maintain the Premises and to return same in a clean and neat condition at the expiration of this Lease. The Tenant will be liable to promptly attend to any repair that may be necessary and in general attend to the upkeep and maintenance of the Premises or alternatively to reimburse the Landlord for the cost of replacing or repairing any breakages or defects. The parties also agree that the Landlord may at any time with prior appointment with the Tenant inspect the Premises and point out any aspect that needs attention whereupon the Tenant shall be obliged to attend hereto within seven (7) days after given written notice to do so. A failure to comply will constitute a breach of contract in terms of this Lease.

7.6 The Tenant undertakes to keep and maintain all gutters, sewerage pipes, water pipes, and drains on the Premises free from obstruction and/or blockage.

7.7 The Tenant shall use and operate all electrical and plumbing fixtures properly.

7.8 The Tenant shall not remodel or make any structural changes to the Premises, nor shall the

© SmartLegalForms    LF237 Lease with Option to Buy 9-15, Pg. 5 of 11    5/31/23

RBSF Construction G.
5/31/2023

Administrator

Tenant deface, mark, paint or drive nails, hooks, or screws into any doors, walls, ceilings, or floors, nor shall the Tenant attach or remove any fixtures or locks without the Landlord's prior written permission.

7.9 The Tenant acknowledges that any improvements made by the Tenant on or to the Premises shall become the property of the Landlord on termination of this Lease and the Tenant shall not be entitled to remove any such improvement unless so demanded by the Landlord in writing, nor claim from the Landlord any compensation in respect thereof. The Tenant further agrees to repair all damage caused by such removal failing which, the Landlord may have the improvements removed and damage repaired and recover all costs so incurred from the Tenant.

7.10 The Tenant shall not do or allow to be done in any way anything which would increase the premiums of or vitiate the insurance policy on the Premises.

7.11 The Tenant shall obtain a reasonable renter's insurance policy to cover loss or damage of personal property, or losses resulting from negligence.

7.12 The Tenant shall keep the grounds of the Premises in a clean and tidy condition, free from all litter, garden refuse, and discarded appliances or motor parts, and shall keep the hedges trimmed, lawns mowed, and flower beds neat and tidy.

7.13 The Tenant agrees to use the Premises solely as a private dwelling for the Tenant and additional members of the Tenant's household as identified in this Lease and not permit use of the Premises for any other purposes other than as a private dwelling.

7.14 The Tenant shall be provided with __2__ key(s) to the Premises and __0__ mailbox key(s). Upon termination of this Lease, all keys are to be returned to the Landlord. The Tenant will be charged __0__ if all keys are not returned.

7.15 Tenant shall not change the locks to the Premises or the mailbox without prior written consent of the Landlord. Upon approval, Tenant shall provide Landlord with one duplicate key per lock.

7.16 If the Tenant becomes locked out of the Premises and Landlord is unavailable, the Tenant must seek the services of a locksmith to regain entry at Tenant's own expense.

7.17 The Tenant acknowledges that parking is self-park and is at car owner's risk. The Landlord is not responsible for any car damage resulting from fire, theft, casualty, or any other cause with respect to the car and its contents. Snow removal is the responsibility of the car owner.

7.18 The Tenant shall not, without the Landlord's written consent, which consent will not be unreasonably withheld:

7.18.1 cede, assign, transfer, alienate, or burden any of his/her rights or delegate any of his/her obligations under this Lease;

7.18.2 surrender occupation or possession of the Premises or permit any person whether as li-

---

RBSF Construction Co.    LF237 Lease with Option to Buy 9-15, Pg. 6 of 11   5/31/23
5/31/2023
Administrator

censee, subtenant, agent, occupier, or custodian to take possession or occupation of the Premises.

7.19 The Tenant shall not provide accommodations for boarders or lodgers.

7.20 The Tenant may have temporary visitors. The same visitor may not stay overnight more than four (4) times within any month without written permission from the Landlord.

7.21 The Tenant shall conduct himself/herself and require persons on the Premises with his/her consent to conduct themselves in a manner that will not contravene any law, bylaw, ordinance, or regulation applicable in respect of the Premises nor cause or permit any nuisance.

7.22 The Tenant shall allow the Landlord and/or any prospective tenant or purchaser to view the exterior and interior of the Premises during reasonable hours, provided a prior appointment to do so has been made with the Tenant.

7.23 The Tenant must regularly test the smoke detectors to ensure that they are working effectively. Batteries may not be removed except to replace them. It is a duty of the Tenant to inform the Landlord in writing of any defect or malfunction of smoke detectors.

7.24 The Tenant agrees that no materials of dangerous, inflammable, or explosive nature will be used at or stored in the Premises. Dangerous materials constitute anything that might unreasonably endanger the Premises and may be deemed hazardous or extra hazardous by an insurance company.

7.25 The Tenant agrees that any violation of the law regarding illegal drug use will be grounds for immediate termination of this Lease, after the Landlord has filed a police report in this regard.

7.26 The Tenant shall notify the Landlord in writing within four (4) days of moving out of a forwarding address. Failing to do so will relieve the Landlord of sending the Tenant a list of damages against the security deposit.

7.27 The Tenant undertakes to keep the swimming pool clean and free from dust, algae, and other deleterious substances; to use the correct and sufficient chemicals as indicated by the Landlord or a pool company nominated by the Landlord; and generally to maintain the pool, filter, and motor in properly working order at the Tenant's expense. Any automatic pool cleaner which may be supplied by the Landlord shall be maintained and repaired by the Tenant at his/her own cost and expense. If, for any reason, the Tenant shall have course to leave the Premises unoccupied for seven (7) days, he/she will ensure that he/she continues to maintain the pool in accordance with the aforesaid obligations. (This paragraph shall only apply if there is a swimming pool included in the premises.)

## 8. LANDLORD OBLIGATIONS:

8.1 The Landlord shall be responsible for maintaining the main walls, roof, and other structural parts of the Premises in good order and repair. Should the main walls, roof, or other structural parts of the Premises become in a defective condition resulting in such consequences as leak-

© SmartLegalForms    LF237 Lease with Option to Buy 9-15, Pg. 7 of 11

age or danger to the Tenant, it shall be the obligation and duty of the Tenant to advise the Landlord of such defective condition in writing and the Landlord shall take steps to have the defective condition rectified without delay.

8.2 The Landlord shall not be liable for any compensation for any damage suffered by the Tenant as a result of rain, hail, snow, leakage, fire, flooding, storms, riot, theft, robbery, or in general any damage as a result of any act or negligence whatsoever nor any damage suffered as a result of the interruption of water or electricity or gas supplies. Should the destruction be due to the default or negligence of the Tenant, his/her family, servants, or persons occupying the Premises under him/her, the Landlord shall under these circumstances be entitled to claim payment of such damages as the Landlord may have suffered. If in any event the damage suffered to the Premises result in that the Premises is not suitable for the purpose for which it has been leased, it shall constitute a ground for the Tenant or the Landlord to cancel this Lease.

8.3 The Landlord shall be liable to pay all rates and taxes, levies payable in respect of the Premises to the local authority, and home owner's association concerns.

8.4 The Landlord, upon receipt of the rental amount by Tenant, shall allow the Tenant to peacefully and quietly have, hold, and enjoy the Premises for the term of this Lease.

8.5 The Landlord shall obtain reasonable insurance to cover fire damage to the Premises and liability insurance to cover certain personal injuries to the Tenant as outlined in and permitted by the insurance policy.

8.6 The Landlord may post a "For Sale" or "For Rent" or "Vacancy" sign on the Premises within the ____0____ final days of this Lease. The Landlord also may show the Premises to prospective purchasers or tenants during this time period after providing reasonable notice to the Tenant.

8.7 If Landlord has additional rules and regulations, which may be modified from time to time for reasonable purposes and without modifying Tenant's rights substantially, Tenant shall sign such additional documents. The Landlord shall provide Tenant at least two (2) weeks notice of any changes to the rules and regulations.

8.8 This Lease and the Tenant's interest hereunder are and shall be subject, subordinate, and inferior to any liens or encumbrances now or hereafter placed on the Premises by the Landlord, all advances made under any such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions of such liens or encumbrances.

8.9 The Landlord shall have the right to enter the Premises upon abandonment of the Premises by the Tenant. The Landlord will not be prosecuted for entry, and will not be liable for any damages or for any payment of any kind, and may determine to re-let the Premises for any part of the then unexpired term of this Lease. The Landlord also retains the option to collect any losses incurred due to the difference between the rental amount actually paid by the Tenant and the total rental amount that would have been payable under this Lease, as well as and in addition to

LF237 Lease with Option to Buy 9-15, Pg. 8 of 11    5/31/23

any costs incurred by any actions taken by the Landlord to mitigate said losses. Any personal property remaining at the Premises following abandonment may be disposed of by the Landlord in a manner deemed proper and the Landlord is relieved of all liability for doing so.

8.10 As required by law, the Landlord makes the following disclosure: "Radon Gas" is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in every state. Additional information regarding radon and radon testing may be obtained from your county public health unit.

8.11 If the Premises was built prior to 1978, the Landlord shall disclose to the Tenant the presence of known lead-based paint and/or lead-based paint hazards in the Premises. Tenant must also receive a federally approved pamphlet on lead poisoning prevention.

## 9. LANDLORD AND TENANT OBLIGATIONS:

9.1 The covenants and conditions in this Lease shall apply to and bind the heirs, legal representatives, and assigns of the Landlord and Tenant, and all covenants are to be construed as conditions of this Lease.

9.2 If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

## 10. PETS:

10.1 It is hereby agreed by and between Landlord and Tenant that Landlord will allow Tenant to have the following described pet(s) and no others in the Premises, upon and subject to the terms and conditions of this Residential Lease:
___2___ dog(s) and ___3___ cat(s) and _____.

10.2 The Tenant shall keep the pet(s) under control at all times, adhere to all applicable local ordinances, dispose of pet waste properly and quickly, and keep the pet(s) from being unnecessarily noisy or aggressive and causing any annoyance or discomfort to others, and to remedy immediately any complaints made through the Landlord. Any damage to the exterior or interior of the Premises caused by the pet(s) will be the full financial responsibility of the Tenant and that the Tenant agrees to pay all costs involved in the restoration to its original condition. The Landlord is permitted to professionally treat the Premises for fleas and ticks, and clean all carpets when the Tenant vacates the Premises at the cost of the Tenant. The Tenant shall indemnify, hold harmless, and defend Landlord against all liability, judgments, expenses (including attorney's fees), or claims by third parties for any injury to any person or damage to property of any kind whatsoever caused by the Tenant's pet(s).

© SmartLegalForms                                          LF237 Lease with Option to Buy 9-15, Pg. 9 of 11

10.3 In consideration for the Landlord's authorization for the Tenant to keep the pet(s) described in this Paragraph on the Premises, the Tenant will pay the Landlord, in trust, a deposit of \_\_\_\_\_0\_\_\_\_\_, to be held and disbursed for pet damages to the Premises (if any) as provided by law. This deposit is in addition to any other security deposit stated in this Lease.

**11. NO WAIVER:**
No relaxation, indulgence, waiver, or concession which the Landlord may show at any time whatsoever in regard to the carrying out of any of the Tenant's obligations in terms of this Lease shall prejudice any of the Landlord's rights under this Lease in any manner whatsoever or be regarded as a waiver of any of the Landlord's rights in terms of this Lease.

**12. FULL LEASE:**
This agreement contains all the terms and conditions of this Lease entered into by the Landlord and Tenant. The Landlord shall not be liable for any warranty, guarantee, representations, or undertakings of whatsoever nature which might have been made to the Tenant by any person whomsoever, except as contained herein. The Landlord shall not be bound by any amendment, alteration, or variation of the terms of this Lease, unless reduced to writing and signed by the Landlord and Tenant or any person duly authorized thereto in writing by them.

**13. WARRANTY OF AUTHORITY AND DECLARATION:**
Each person signing this Lease warrants his/her authority to do so AND that they have read it and understand it and voluntarily agree to it.

**14. JURISDICTION:**
Any dispute arising under this Lease shall be heard in a court of competent jurisdiction in the state of \_\_\_\_PA\_\_\_\_, and the law of said state shall apply to any such dispute.

**15. OTHER TERMS (OPTIONAL):**
Other terms shall include:
LANDLORD HEREBY GRANTS RBSF CONSTRUCTION COMPANY ("THE TENANT") FIRST RIGHT OF REFUSAL IN THE EVENT OF THE SALE OF THE PROPERTY &/OR LAND LOCATED AT:
3 EAST SPRING OAK CIRCLE
MEDIA
PA 19063

**16. PURCHASE OPTION:**
At any time during the duration of this Lease, the Tenant shall have the option to purchase the Premises for \_\_\_\_TBD\_\_\_\_ by written notice to the Landlord no later than

RBSF Construction Co.
5/3/23

LF237 Lease with Option to Buy 9-15, Pg. 10 of 11   5/31/23

Administrator

__May 30th 2026__. Upon acceptance of the purchase option by the Landlord, Tenant agrees to a down payment of __TBD__ and closing must occur by __90__ days after receipt of the down payment. If at any time the Tenant becomes in default of the terms of this Lease, the option to purchase is terminated.

## EXECUTION

### LANDLORD:

Signature of Landlord or Landlord's Agent: _[signed] by Administrator_

Name of Landlord or Landlord's Agent: _Hardin Donaghy % Estate of Amy Donaghy_

Title of Agent (if applicable): _Administrator_

(for and on behalf of _Estate of Amy Donaghy_)

Date: _5/31/2023_

WITNESS signature: _[signed] Daniel Gilliam_    Date: _5-31-23_

Name: _Daniel Gilliam_

## JOINT AND SEVERAL TENANCY (IF TWO OR MORE ADULT TENANTS):

We understand and agree that our obligations are joint and several. We understand that we will be responsible for our individual obligations as well as the obligations of all other tenants signing this Lease. This includes paying the rental amount and all other terms of this Lease.

**TENANT:** _____

Printed Name: _____    Date: _____

**TENANT:** _____

Printed Name: _____    Date: _____

**TENANT:** _____

Printed Name: _____    Date: _____

**TENANT:** _____

Printed Name: _____    Date: _____

WITNESS signature: _____    Date: _____

Name: _____

© SmartLegalForms    LF237 Lease with Option to Buy 9-15, Pg. 11 of 11    _5/31/23_

_[signed] RBSF Construction Co.  5/31/23_

_[signed] Administrator_

# Lead-Based Paint Disclosure

(for use with all property built before 1978)

**Notice to Lessee (Tenant)**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Notice to Purchaser**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**1. Landlord Disclosure:**

1.1 Initial (a) or (b) regarding the existence of lead-based paint and/or lead-based paint hazards:

    (a) _____ Known lead-based paint and/or lead-based paint hazards exist on the premises.

Explanation: _____

_____

_____

    (b) _[initialed]_. The Landlord does not have knowledge of any lead-based paint or lead-based paint hazards existing on the premises.

1.2. Initial (a) or (b) regarding documentation of any lead-based paint and/or lead-based paint hazards:

    (a) _____ The Landlord has provided the Tenant with any and all available records and reports relating to the current or past existence of lead-based paint and/or lead-based paint hazards on the premises, including (list documents):

_____

_____

_____

© SmartLegalForms     LF237 Lead-Based Paint Disclosure 9-15

_[Signature] Ross Construction Co._    5/31/23

5/3/23

_[Signature]_
Administrator

(b) ~~Administrator~~ The Landlord does not have any records or reports that relate to the current or past existence of lead-based paint or lead-based paint hazards on the premises.

## 2. Tenant Acknowledgment

2.1 _(S.J.)_ The Tenant has received copies of any documents listed in 1.2(a) above, if any.

2.2 _(S.J.)_ The Tenant has received a copy of the pamphlet titled *Protect Your Family from Lead in Your Home*.

2.3 _(S.J.)_ If this lease includes an option to buy, the Tenant has either had the opportunity to conduct a risk assessment as provided to purchasers of residential property under the federal Lead-Based Paint Disclosure Rule and any applicable state law, or waives the right to conduct said risk assessment.

## 3. Acknowledgment of Real Estate Agent or other Intermediary (if Applicable) N/A.

3.1 _____ The Real Estate Agent or other Intermediary has informed the Landlord of the Landlord's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The below parties have reviewed the information above and certify, to the best of their knowledge, that the information provided is true and accurate.

_[signature] RBSF Construction Company  5/31/23_
Tenant signature / Date

_____
Tenant signature / Date

_____
Tenant name

_____
Tenant name

_____
Tenant signature / Date

_____
Tenant signature / Date

_____
Tenant name

_____
Tenant name

_____
Landlord or Landlord's Agent Signature

_____
Title (if applicable) / Date

_____
Landlord or Landlord's Agent Name

(for and on the behalf of, if applicable)

_____
Real Estate Agent/Intermediary (if applicable)

(Name and Title) / Date

LF237 Lead-Based Paint Disclosure 9-15   5/31/23

_[signature] 5/31/23  RBSF Construction Co._
_[signature] Administrator_